



**FILED**
**Jul 11, 2024**
**02:42 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| William Tucker | ) | Docket No. 2023-06-1704 |
| | ) | |
| v. | ) | State File No. 44728-2022 |
| | ) | |
| Lu, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard June 12, 2024 |
| Compensation Claims | ) | via Microsoft Teams |
| Kenneth M. Switzer, Chief Judge | ) | |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employer challenges the trial court's determination that the employee's physician, with whom he had treated prior to the work injury, became his authorized physician upon referral from the panel-selected physician. The employee lost his footing and fell while he was unloading a truck at work, resulting in injuries to his neck, back, and ribs. The employer accepted the claim and provided a panel of physicians from which the employee selected a doctor. That physician then referred the employee to the doctor who had previously performed back surgery for a non-work-related condition. The employer did not provide another panel in response to that direct referral but instead authorized the visit, and that physician opined that the fall at work was the cause of his current need for additional surgery. Subsequently, a utilization review physician concluded the recommended surgery was not medically necessary, and the Bureau's Medical Director agreed. Following that denial, the employer denied the employee's request to return to the physician who had recommended surgery. As a result, the employee returned to his initial panel physician. That physician agreed the work accident was the cause of the employee's need for surgery and stated the employee should follow up with the surgeon to whom he had referred the employee. Thereafter, the employee attended a medical examination with another physician at the employer's request, and that physician disagreed about the cause of the need for surgery. The referral physician, citing an emergent need, performed surgery without the employer's authorization. Following an expedited hearing, the trial court determined that: (1) a valid direct referral had been made; (2) the referral doctor became the authorized physician; (3) the surgery was work-related and reasonably necessary; and (4) the employee was entitled to temporary disability benefits following surgery. The employer has appealed. Upon careful consideration of the record and the arguments of counsel, we affirm the trial court's order and remand the case.

1

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Gregory H. Fuller and Houston M. Gunn, Brentwood, Tennessee, for the employer-appellant, Lu, Inc.

Julie A. Reasonover, Nashville, Tennessee, for the employee-appellee, William Tucker

**Factual and Procedural Background**

William Tucker ("Employee") was unloading a truck for Lu, Inc. ("Employer"), on June 24, 2022, when he lost his footing and fell, injuring his back, neck, and ribs. Employer accepted the claim, offered a panel, and authorized treatment at Concentra Medical Center. Employee received conservative treatment, including physical therapy, and after failing to improve, was referred to a specialist for further evaluation of his cervical spine in August 2022.

Employer then provided a panel of specialists, and Employee verbally selected Dr. Daniel Burval, whom he saw in September 2022.[1] In his September 21 report, Dr. Burval detailed a history of Employee "falling off a trailer 2 months ago" as well as a "prior remote two-level fusion C4 through C6." He noted that Employee had a cervical fusion performed by Dr. Margaret MacGregor "about a year and a half ago." Dr. Burval did not have those records, but he obtained x-rays that revealed a "prior anterior plate application at C4-C6." Dr. Burval observed that some of the hardware from Employee's prior fusion was "in good position with solid arthrodesis" but that there was "a little bit of back out of 1 of the caudal screws." Dr. Burval stated he would "contact Worker's Comp to see that [Employee] can be seen by his treating surgeon who treated him a year and a half ago" to compare x-rays and "see if there is any anatomical change[]." At that time, Dr. Burval did not recommend additional spinal surgery but "highly recommend[ed] evaluation *and treatment* by treating spine surgeon." (Emphasis added.) Dr. Burval diagnosed Employee with radiculopathy and referred him to Dr. MacGregor.

In response to this direct referral, Employer did not provide another panel but authorized an appointment with Dr. MacGregor, whom Employee saw on November 8, 2022. During that visit, Dr. MacGregor compared pre-injury diagnostic imaging with x-rays taken after the work incident and noted the following:

---

[1] It is undisputed that Employee verbally selected Dr. Burval from the first specialist panel provided by Employer. Section 50-6-204(a)(3)(D)(ii) states that when an employee has "been presented the physician selection form but has failed to sign the completed form and return it to the employer, the employee's receipt of treatment from any physician provided in the panel after the date the panel was provided shall constitute acceptance of the panel and selection of the physician from whom the employee received treatment . . . ." Thus, we conclude Dr. Burval was an authorized treating physician following Employee's verbal selection of him from a panel and Employee's receipt of treatment from him.

I reviewed his cervical spine x-rays that were completed at TOA [after the fall] and compared those to his last images performed at the hospital as part of routine follow up after his [fusion]. He has a clear change in position of his hardware, with some backing out of one of his screws, and fracture through his fusion mass at both levels, and his plate is anteriorly displaced when compared with the imaging performed previously[;] now evident also [is] subtle listhesis at C4[-]5 and C5[-]6.

In response to a questionnaire sent by Employer, Dr. MacGregor, in relevant part, "agreed" that the work incident caused Employee's current symptoms and changes to his hardware. She did not agree his current condition was "at least 50% related to pre-existing issues" and stated that his neck and left arm pain were due to the backing out of the caudal screw. Dr. MacGregor also noted that Employee had been working full time without restrictions at the time of his work incident.

In January 2023, following a CT scan, Employee saw Dr. MacGregor again. Dr. MacGregor recommended surgery and, in a letter, stated that Employee sustained a new injury at work that resulted in a "hardware failure after a work[-]related injury." She also noted a "progressive change in position of [Employee's] hardware" as compared to his earlier post-op imaging. Employer submitted the surgical recommendation to utilization review, and the reviewing physician concluded surgery was not medically necessary. Employee appealed that decision to the Bureau's Medical Director, who agreed with the utilization review physician. In the letter issued by the Medical Director, he recommended that Dr. MacGregor confer with the radiologist in order to draft a joint amended report and new treatment plan. Instead, Dr. MacGregor wrote a letter stating that Employee had sustained a new injury as a result of the June 2022 work incident and that objective imaging after the fall revealed a "definite change" in the position of the hardware. She noted there was a "greater than 50% certainty that this is due to the work injury[.]"

Employee requested a follow-up visit with Dr. MacGregor, but Employer declined to authorize any additional visits or treatment with her.[2] Instead, Employer advised Employee that he needed to follow up with Dr. Burval, who it viewed as the only authorized treating physician. Consequently, Employee returned to Dr. Burval in May 2023. Dr. Burval reviewed imaging from January and observed that Employee's left C-6 screw was loose "with collapse through the endplate into the C5-7 spondylotic disc space." He also noted that the right C-6 screw was "backed out about 2 mm" although it had not penetrated the endplate or disc space. Further, the C5-6 cage was pushed down into the C-6 endplate "consistent with endplate collapse." With regard to the issue of medical treatment, Dr. Burval stated, "I do not see any reason why [Employee] should not be allowed to be cared for by his original spine surgeon. I do not have an explanation for why that would not be

---

[2] Employee asserts he asked to return to Dr. MacGregor so she could comply with the Medical Director's recommendation.

authorized." As to causation, Dr. Burval noted that once pre-fall x-rays he viewed were authenticated and confirmed to be Employee's, "it will be with a reasonable degree of medical certainty that the implant/hardware failure/loosening was more than 50% related to the reported work[-]related fall in [June] 2022 and a revision of his C4-6 anterior instrumentation and fusing C6-7 is medically sound and indicated." He wrote that "[Employee] must follow up with Dr. MacGregor as his treating physician," but may return as needed, although "[n]o follow up [appointment] was required." In response to this report, Employer did not provide a new panel of specialists within three days or authorize Employee to return to Dr. MacGregor.

In June, counsel for Employee sent correspondence to Dr. Burval inquiring as to whether he referred Employee to Dr. MacGregor for Dr. MacGregor to assume the role of authorized treating physician for the June 2022 work incident. Dr. Burval checked "yes" and noted that objective imaging showed "hardware collapse." Upon receipt of this correspondence, Employer provided another panel of specialists that did not include Dr. MacGregor; however, Employee did not select a provider from this new panel. In the interim, counsel for Employee also sent a letter to Dr. MacGregor, inquiring as to causation. Specifically, Employee asked:

> Is it your opinion within a reasonable degree of medical certainty that the neck surgery you recommended for [Employee] is medically necessary and 51% or more related to his work accident on June 24, 2022 while employed with [Employer]?

Dr. Macgregor checked "yes." Thereafter, Employee was examined by Dr. Douglas Mathews at Employer's request. Following his examination, Dr. Mathews provided an opinion that the work incident caused

> an exacerbation of his history of chronic cervicalgia and non-verifiable cervical radicular complaints. Therefore, his current cervical spine condition, which does not require surgical intervention, is less than 50% related to his 06/24/2022 work injury.

In August 2023, Employee requested a hearing to seek a court order compelling Employer to authorize the surgery recommended by Dr. MacGregor. The parties deposed Dr. MacGregor and Dr. Mathews prior to the hearing. Dr. MacGregor reiterated her opinions as to causation and medical necessity of the surgery. Dr. Mathews testified that Employee's need for surgery in the future was not caused by the June 2022 incident; however, he stated that "[i]f there's motion of – further migration of the screw, then that would be an indication for surgery. Ultimately, Dr. Mathews testified that Employee's current need for medical treatment was "primarily" due to his pre-existing condition. Although Dr. Burval was not deposed, he responded to a letter seeking his opinion. Dr. Burval agreed he had not declined to treat Employee, and he stated that his

4

recommendation for Employee to return to Dr. MacGregor was for treatment related to the work accident, stating, "[patient] has collapsed hardware after 6/24/2022 fall."

In October 2023, Employee sought emergency treatment and obtained imaging that showed potential "loosening of the right C6 screw which was not definitely present on prior CT or radiographs." Upon review, Dr. MacGregor noted that the "screw position on 10/30 chest x-ray has changed position/unscrewed since last images." As a result, Dr. MacGregor recommended emergency surgery and performed a second fusion.[3] In January 2024, Dr. MacGregor opined that the surgery performed in November 2023 was medically necessary and over 50% causally related to Employee's work accident. Dr. MacGregor also noted that she took Employee off work following his surgery.

At trial, Employee testified live, and the parties presented the deposition testimony of Drs. MacGregor and Mathews. Employee testified that he was able to work without difficulty before the fall. He noted that, after the June 2022 fall, he felt pain in his neck and body, had trouble sleeping, and could not do things at home that he was usually able to do. He stated that, in spite of this, he continued to do "the best [he could] at work." Following his surgery, Employee testified that his symptoms improved, although he still experiences occasional sharp pains in his neck and arms. He has not worked since surgery and remains under the medical care of Dr. MacGregor.

Following the February 6, 2024 expedited hearing, the trial court concluded that Employee's surgery was work-related and reasonably necessary. It determined Employee was also entitled to temporary disability benefits and ongoing medical treatment with Dr. MacGregor as his authorized treating physician. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2023). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our

---

[3] The emergency surgery was performed on the date the expedited hearing was scheduled. Counsel for Employee notified the court and counsel for Employer of the surgery, and the hearing was continued.

5

obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2023).

## Analysis

On appeal, Employer raises several issues that we restate and combine as follows: (1) whether the trial court erred in designating Dr. MacGregor as Employee's authorized treating physician; and (2) whether the trial court erred in concluding that Employee is entitled to temporary total disability benefits as a result of the unauthorized surgery performed by Dr. MacGregor in November 2023.[4]  Employee contends the trial court did not err and requests that he be awarded attorneys' fees for what he asserts is a frivolous appeal.

### *Referral and Authorized Treating Physician*

In its brief on appeal, Employer contends that Dr. Burval did not make a "necessary referral [to Dr. MacGregor] for the purpose of treatment."  It asserts the clear and unambiguous statutory language limits medical referrals to those that are "necessary" and for the purpose of treatment.  Only such a referral, in Employer's view, can serve to transfer the status of authorized treating physician to the referral physician.  *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii).  Specifically, Employer argues that Dr. Burval's referral to Dr. MacGregor was not necessary because "it was not for the purpose of providing treatment that Dr. Burval, himself, was incapable of rendering" and because "his expressed intent was for the purpose of identifying an anatomical change."

Section 50-6-204(a)(3)(A)(ii) provides that, "[w]hen necessary, the treating physician selected in accordance with this subdivision (a)(3)(A) shall make referrals to a specialist physician, surgeon, or chiropractor and immediately notify the employer."  When such a referral is made, "[t]he employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty groups."  *Id.*  In cases where the employer does provide a panel, "the employee may choose a

---

[4] In its March 4, 2024 notice of appeal, Employer referenced a notice of appeal apparently filed on February 26, 2024, which sought to appeal the trial court's February 16, 2024 order.  That prior order was also the subject of a motion to alter or amend, which led to the issuance of the current order that is the subject of this appeal.  The March 4 notice of appeal stated that Employer was adopting all issues set out in the February 26 notice of appeal.  However, the February 26 notice of appeal is not included in the record on appeal; thus, we have no way of knowing what issues Employer previously identified.  An appealing party is responsible to ensure a complete record on appeal.  *See* Tenn. Comp. R. & Regs. 0800-02-22-.02(1).  Thus, any issues raised on that prior notice of appeal that were not addressed in Employer's subsequent notice of appeal or its brief are deemed waived.  *See Moore & Seiferth v. Ingles Markets, Inc.*, Nos. 2015-02-0193, 2015-02-0183, 2015 TN Wrk. Comp. App. Bd. LEXIS 41, at *3-4 (Tenn. Workers' Comp. App. Bd. Nov. 4, 2015).

specialist, physician, surgeon, chiropractor or specialty practice group to provide treatment only from the panel provided by the employer." *Id.*

Employer argues that two key phrases, "when necessary" and "to provide treatment," are essential for purposes of a valid referral. Here, Employer asserts that Dr. Burval did not make a *necessary* referral because he was "qualified and willing to render the necessary treatment . . . and the purpose of the referral was to appease [Employee's] preference to treat with Dr. MacGregor." Employer argues that Dr. Burval was able to provide necessary medical treatment himself and remained willing to treat Employee. In its brief on appeal, Employer asserts that "Dr. Burval's purpose for the referral was because [Employee] wanted to go back to Dr. MacGregor. Rather than referring [Employee] to Dr. MacGregor for treatment Dr. Burval could not provide, Dr. Burval referred [Employee] to Dr. MacGregor to fulfill [Employee's] personal desire to treat with Dr. MacGregor." Employer also asserts that Dr. Burval's referral was not valid because his "expressed intent" was for the purpose of identifying an anatomical change rather than for treatment. We are unpersuaded by these arguments.

On September 21, 2022, Dr. Burval explicitly stated in his report that he would "[c]ontact Workers' Comp to see that [Employee] can be seen by his treating surgeon who treated him a year and a half ago . . . I do not recommend additional surgery and highly recommend evaluation *and treatment* by [his] treating spine surgeon." (Emphasis added.) Further, on an accompanying WorkLink Physician Report, Dr. Burval provided a direct referral to Dr. MacGregor. Following this direct referral, Employer did not provide a new panel within three business days but instead authorized Employee's appointment with Dr. MacGregor. Because Employer did not exercise its prerogative to offer a new panel within three business days of the direct referral, we conclude Employer was properly deemed to have accepted the referral pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii).[5] Thus, Dr. MacGregor became the authorized treating physician and any treatment recommended by her is presumed to be reasonable and medically necessary pursuant to subsection 204(a)(3)(H). Similarly, when Dr. MacGregor recommended and performed emergency cervical surgery, such treatment was presumed to be medically necessary as a result of the work accident. Moreover, both Dr. Burval and Dr. MacGregor stated that hardware failure and the need for surgery were more than 50% related to the work accident, and Employer's evidence did not sufficiently rebut the presumption of medical necessity. Thus, we affirm the trial court's determinations on these issues.

---

[5] Employer also takes issue with the trial court's determination that Dr. Burval's referral to Dr. MacGregor is presumed to be medically necessary pursuant to section 50-6-204(a)(3)(H). This section provides that "[a]ny treatment recommended by a physician or chiropractor selected pursuant to this subdivision (a)(3) or by referral, if applicable, shall be presumed to be medically necessary for treatment of the injured employee." Employer contends that this presumption attaches only to "any treatment" recommended by the referred provider rather than the referral itself. We conclude that a referral for treatment is, in and of itself, a treatment recommendation as contemplated by section 50-6-204(a)(3)(H) and is entitled to the presumption of medical necessity. Accordingly, we discern no error by the trial court.

7

*Temporary Total Disability Benefits*

Next, Employer contends that Employee is not entitled to temporary total disability benefits based on Dr. MacGregor's opinion because the surgery she performed was not authorized and because she was not an authorized treating physician. For the reasons outlined above, we conclude there was a valid referral and that Dr. MacGregor was properly deemed the authorized treating physician. Thus, as stated above, treatment recommended or rendered by her is presumed to be reasonable and medically necessary. Dr. MacGregor provided clear work restrictions that support the trial court's award of temporary total disability benefits. Accordingly, we discern no error as to this issue.[6]

*Frivolous Appeal*

Finally, Employee has asked that we deem this appeal frivolous and award attorneys' fees and costs associated with the appeal, contending that Employer did "not present or cite any credible evidence, case law, or rule of law which would entitle them to a reversal or other relief from the decree of the trial court." "A frivolous appeal is one that . . . had no reasonable chance of succeeding," *Adkins v. Studsvik, Inc.*, No. E2014-00444-SC-R3-WC, 2015 Tenn. LEXIS 588, at *30 (Tenn. Workers' Comp. Panel July 21, 2015), or one that is devoid of merit or brought solely for delay, *Yarbrough v. Protective Servs. Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *11 (Tenn. Workers' Comp. App. Bd. Jan. 25, 2016). "[P]arties should not be required to endure the hassle and expense of baseless litigation. Nor should appellate courts be required to waste time and resources on appeals that have no realistic chance of success." *Id.* at *10-11; *see also Burnette v. WestRock*, No. 2016-01-0670, 2017 TN Wrk. Comp. App. Bd. LEXIS 66, at *18 (Tenn. Workers' Comp. App. Bd. Oct. 31, 2017). Given that Employer's statutory interpretation arguments raised an issue of first impression as to the meaning of certain language in subsection 204(a)(3)(A)(ii), we decline to find Employer's appeal to be frivolous or taken solely for delay.

---

[6] In the expedited hearing order, the court required Employer to pay past temporary total disability benefits in a lump sum from November 8 through the date of the hearing, along with weekly benefits in the amount of $1,065.41 until Employee reached maximum medical improvement or was able to return to work. Thereafter, Employer filed a motion to alter or amend, arguing that Employee had been paid his full wages from November 8 through February 16. Specifically, Employer requested that it be relieved of its obligation to pay past temporary disability benefits in the amount of $13,698.12 as well as ongoing temporary disability benefits, to the extent those past payments exceed the compensation rate. Employee did not ask for a credit against any award of permanent disability benefits. Thereafter, the trial court issued an amended order requiring Employer to pay only ongoing temporary disability benefits from February 17 until Employee reaches maximum medical improvement or is able to return to work. This aspect of the amended order has not been appealed.

**Conclusion**

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| William Tucker | ) | Docket No.   2023-06-1704 |
| | ) | |
| v. | ) | State File No.  44728-2022 |
| | ) | |
| Lu, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard June 12, 2024 |
| Compensation Claims | ) | via Microsoft Teams |
| Kenneth M. Switzer, Chief Judge | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 11th day of July, 2024.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Gregory H. Fuller<br>Houston M. Gunn | | | | X | ghfuller@mijs.com<br>hmgunn@mijs.com |
| Julie A. Reasonover | | | | X | julie@reasonoverlaw.com<br>kat@reasonoverlaw.com |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Acting Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov